# In the United States Court of Federal Claims

No. 18-1484C

(E-filed: October 31, 2019)

| | |
|---|---|
| RAYMOND G. FARMER, in his capacity as Liquidator of Consumers' Choice Health Insurance Company, and MICHAEL J. FITZGIBBONS, in his capacity as Special Deputy Liquidator of Consumers' Choice Health Insurance Company, <br><br>    Plaintiffs, <br><br>v. <br><br>THE UNITED STATES, <br><br>    Defendant. | Claim for Payments under the Patient Protection and Affordable Care Act Reinsurance Program, 42 U.S.C. § 18061 (2012); Motion to Dismiss, RCFC 12(b)(1); Insolvent Health Insurer; No Jurisdiction Over State Law Claims; Stay Warranted Pending Supreme Court Review. |

C. Mitchell Brown, Columbia, SC, for plaintiffs. Thad H. Westbrook and Miles E. Coleman, of counsel.

Terrance A. Mebane, with whom were Joseph H. Hunt, Assistant Attorney General, Ruth A. Harvey, Director, Kirk T. Manhardt, Deputy Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendant. Frances M. McLaughlin and Christopher VanDeusen, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

    On September 26, 2018, plaintiffs Raymond G. Farmer and Michael J. FitzGibbons, in their capacity as liquidators of Consumers' Choice Health Insurance Company (Consumers' Choice), a failed health insurer, filed a ten-count complaint in this

court.[1]  Currently before the court in this matter is defendant's motion to dismiss, which is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).  See ECF No. 11.  Plaintiffs filed a response to the motion to dismiss and also requested oral argument.  See ECF No. 12 at 10.  The government filed a reply brief in support of its motion.  See ECF No. 13.

Upon review of the complaint, ECF No. 1, and the parties' briefs, the court determined that oral argument is unnecessary.  Accordingly, plaintiffs' request for oral argument is **DENIED**.  For the reasons stated below, defendant's motion is **GRANTED in part**, as to Counts VII, VIII, and IX of the complaint.  Because the court **STAYS** this matter pending a decision by the Supreme Court of the United States in the matters of Land of Lincoln Mutual Health Insurance Co. v. United States, 892 F.3d 1184 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2744 (U.S. June 24, 2019) (No. 18-1038), and Moda Health Plan, Inc. v. United States, 892 F.3d 1311 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2743 (U.S. June 24, 2019) (No. 18-1028), defendant's motion to dismiss is **DENIED in part**, as premature, regarding the remaining counts of the complaint.

I.   Background

The facts recounted in this section are derived from the complaint and exhibits that were attached to the complaint and the parties' filings.  Only the facts which are relevant to either defendant's jurisdictional challenge to Counts VII, VIII, and IX, or to the court's decision to stay the remainder of this action, are provided.  The facts recited here appear to be undisputed, at least for the purposes of the resolution of defendant's motion to dismiss.  See ECF No. 12 at 12 n.3 ("The material facts regarding the [legislation and government programs at issue in this case] do not appear to be in dispute.").  The court makes no findings of fact in this opinion.

   A.   The Affordable Care Act and the Health Insurer Consumers' Choice

The Patient Protection and Affordable Care Act (ACA) became law in 2010.  Pub. L. No. 111-148, 124 Stat. 119 (2010).  According to plaintiffs, one of the goals of the initiative was to "protect health insurers formed under the ACA, like Consumers' Choice Health Insurance Company."  ECF No. 1 at 2.  Consumers' Choice was formed as a non-profit mutual benefit corporation, under South Carolina state law, and also qualified, under the ACA, as a Consumer Operated and Oriented Plan (CO-OP).  Id. at 4, 12.  A CO-OP was required to certify that its insurance plans were "qualified health plans," or QHPs, under the ACA.  Id. at 4.  Through its Centers for Medicare and Medicaid

---

[1]   Although the terms "first cause of action," "second cause of action," etc. appear in the complaint, the court adopts the more succinct terminology that defendant uses —Count I, Count II, etc.

Services (CMS), the United States Department of Health and Human Services (HHS) exercised oversight of the initiative. Id. at 3-4.

Plaintiffs state that two types of loans were provided by HHS/CMS to Consumers' Choice. The first was a start-up loan "'to provide assistance to such person in meeting its start-up costs.'" Id. at 5 (quoting 42 U.S.C. § 18042(b)(1) (2012)). The second type of loan was a solvency loan "'to provide assistance to such person in meeting any solvency requirements of States in which the person seeks to be licensed to issue qualified health plans.'" Id. (quoting 42 U.S.C. § 18042(b)(1)). For Consumers' Choice, the start-up loan was in the amount of $18,709,800 and the solvency loan was in the amount of $68,868,408. Id. at 13.

The complaint also discusses at some length three programs of the ACA which "facilitate[d] the formation, operation and funding of insurers like Consumer's Choice." Id. at 4. Plaintiffs' complaint describes these three programs as "risk mitigation" programs, and also uses the shorthand descriptor "the 3Rs" for these programs. Id. at 5. The 3Rs were the Reinsurance, Risk Adjustment, and Risk Corridor programs. Id.

The primary focus in this suit is on the ACA's Reinsurance program. As explained by plaintiffs, the Reinsurance program, established by 42 U.S.C. § 18061 (2012), was "intended to stabilize individual market premiums during the early years of the ACA's new market reforms." ECF No. 1 at 6. For policy year 2015 (the insurance coverage year central to this dispute), Consumers' Choice was due to receive $36,976,345 from HHS/CMS under the Reinsurance program. Id. at 19. It should be noted as well that a CO-OP could also owe payments to HHS/CMS under another of the 3Rs, the Risk Adjustment program. Id. at 9-10.

  B. Insolvency and Liquidation of Consumers' Choice

There were only two full policy years, 2014 and 2015, during which Consumers' Choice was able to provide health insurance in South Carolina. ECF No. 1 at 13-14, 17-18. By October 2015, Consumers' Choice was in financial distress, and over the next few months was obliged to cease operations. Id. at 14, 17-18. South Carolina insurance authorities and Consumers' Choice instituted the procedures for the supervision, rehabilitation, and eventual liquidation of the health insurer. Id. at 17-18. A state court issued orders during this time-frame that were designed, in part, to conserve the assets of Consumers' Choice. Id. The two plaintiffs in this suit are the liquidators of Consumers' Choice. Id. at 3.

  C. Offset of Reinsurance Program Payments

Meanwhile, HHS/CMS began a series of actions which were focused on Consumers' Choice's outstanding start-up loan, and other amounts due to HHS/CMS, and which also targeted the Reinsurance program payments that were due to Consumers'

3

Choice for the policy year 2015. HHS/CMS placed an "administrative hold" on Reinsurance funds for 2015, and then effectuated a series of offsets, against those Reinsurance funds, to recoup the start-up loan amount and other payments due from Consumers' Choice. Id. at 19-20. Because of these actions, Consumers' Choice received no Reinsurance funds for 2015, as the government had offset almost the entire amount of the start-up loan, and other amounts, against those Reinsurance payments. Id. at 19, 32. In plaintiffs' view, the offset by HHS/CMS in the total amount of $36,976,345 was invalid for reasons which are separately set forth in their ten-count complaint.

      D.      South Carolina Insurers' Rehabilitation and Liquidation Act

One source of law relied upon by plaintiffs is the South Carolina Insurers' Rehabilitation and Liquidation Act (Liquidation Act). ECF No. 1 at 16 (citing S.C. Code Ann. Tit. 38, chap. 27 (2014)). As described below, various sections of the Liquidation Act are cited as support for plaintiffs' claims. In essence, plaintiffs argue that the offsets conducted by HHS/CMS against Consumers' Choice's Reinsurance program payments violated certain provisions of the state's Liquidation Act, or can be voided pursuant to the state's Liquidation Act.

      E.      Plaintiffs' Claims for Reinsurance Program Payments in the Amount of $36,976,345, Counts I-X of the Complaint

In their complaint, plaintiffs pled in the alternative seeking either monetary damages or just compensation in the amount of $36,976,345 for each of the enumerated counts. ECF No. 1 at 24, 26, 28-29, 32, 34, 36-39. The court summarizes the legal basis for each count below.

          1.      Count I

The legal basis for Count I is "Violation of Federal Statute or Regulation." ECF No. 1 at 23. According to plaintiffs, HHS/CMS's failure to make Reinsurance payments to Consumers' Choice for the 2015 policy year violated 42 U.S.C. § 18061 and 45 C.F.R. §§ 153.200-153.270 (2018). Id.

          2.      Count II

The legal basis for Count II is "Violation of Federal Statute or Regulation," in the context of "Exercising an Offset and Imposing an Administrative Hold in Violation of Federal and State Law." ECF No. 1 at 24. According to plaintiffs, HHS/CMS's utilization of an administrative hold for Consumers' Choice's Reinsurance payments for the 2015 policy year was "an unlawful application of federal law to the priority of

claims" and was "contrary to . . . the federal netting regulation which HHS/CMS claims applies." [2]  Id. at 26.

3.  Count III

The legal basis for Count III is "Breach of Contract."  ECF No. 1 at 27.  The agreements alleged to have been breached relate to QHPs provided by Consumers' Choice in the 2014 and 2015 policy years (QHP Agreements).  Id.; see also ECF No. 1-3 at 2-11; ECF No. 1-4 at 2-12.  According to plaintiffs, when HHS/CMS failed to make Reinsurance payments to Consumers' Choice for the 2015 policy year, the QHP Agreements were breached.  ECF No. 1 at 28.

4.  Count IV

The legal basis for Count IV is "Breach of Contract."  ECF No. 1 at 28.  The agreement alleged to have been breached is the loan agreement which sets forth the terms for the start-up and solvency loans provided to Consumers' Choice by HHS/CMS (Loan Agreement).  Id. at 28-29; see also ECF No. 1-2 at 2-76; ECF No. 11-1 at 2-3.  According to plaintiffs, when HHS/CMS failed to make Reinsurance payments to Consumers' Choice for the 2015 policy year, the Loan Agreement was breached.  ECF No. 1 at 29.

5.  Count V

The legal basis for Count V is "Breach of Implied-in-Fact Contract."  ECF No. 1 at 29.  The implied-in-fact contract identified by plaintiffs is as follows:  "Consumers' Choice entered into a valid implied-in-fact contract with the Government regarding the Government's obligation to make full and timely Reinsurance payments to Consumers' Choice in exchange for Consumers' Choice's agreement to become a QHP and participate as a CO-OP in the ACA."  Id. at 30.  According to plaintiffs, when HHS/CMS failed to make Reinsurance payments to Consumers' Choice for the 2015 policy year, the implied-in-fact contract was breached.  Id. at 32.

6.  Count VI

The legal basis for Count VI is "Breach of the Implied Covenant of Good Faith and Fair Dealing."  ECF No. 1 at 32.  This covenant allegedly provided Consumers' Choice with "reasonable expectations . . . that full and timely Reinsurance payments for the 2015 policy year would be paid by the Government to QHPs."  Id. at 33.  According to plaintiffs, when HHS/CMS failed to make Reinsurance payments to Consumers'

---

[2]  State law is also referenced in this count, regarding an obligation allegedly established by the ACA that HHS/CMS must respect state insolvency law.  See infra note 4.

Choice for the 2015 policy year, the covenant of good faith and fair dealing was breached.  Id. at 34.

       7.     Count VII

The legal basis for Count VII is "Violation of S.C. Code Ann. § 38-27-510." ECF No. 1 at 35.  This provision, according to plaintiffs, requires that "the amount recoverable by the Liquidator [of a failing health insurer] from reinsurers may not be reduced as a result of delinquency proceedings." Id. at 17.  Plaintiffs allege that HHS/CMS, acting as a reinsurer, "reduce[d] the amount recoverable by the Liquidator from the Government as a result of delinquency proceedings by paying itself for the Risk Adjustment balances and the Start Up Loan." Id. at 35.  Thus, in plaintiffs' view, the government violated S.C. Code Ann. § 38-27-510 when HHS/CMS failed to make Reinsurance payments to Consumers' Choice for the 2015 policy year.  Id. at 36.

       8.     Count VIII

The legal basis for Count VIII is "Violation of S.C. Code Ann. § 38-27-610." ECF No. 1 at 36.  This provision, according to plaintiffs, mandates that "policyholder level claims[] [be] recognized as higher priority claims than claims asserted by the [federal] Government." Id. at 17.  Plaintiffs allege that HHS/CMS's "use of administrative holds and offsetting in regard to the reinsurance payments owed to Consumers' Choice has circumvented the priority of distribution established and mandated by S.C. Code Ann. § 38-27-610." Id. at 37.  Thus, in plaintiffs' view, the government violated S.C. Code Ann. § 38-27-610 when HHS/CMS failed to make Reinsurance payments to Consumers' Choice for the 2015 policy year.  Id.

       9.     Count IX

The legal basis for Count IX is "Voidable insider preferences under S.C. Code Ann. § 38-27-470." ECF No. 1 at 37.  This provision, according to plaintiffs, operates to void "any transfer of an insolvent insurer's property to a creditor" — when certain conditions are met — because such a transfer is a "voidable preference." Id. at 17.  Plaintiffs allege that HHS/CMS "engaged in insider preferences made voidable by the Liquidation Act." Id. at 37.  Thus, in plaintiffs' view, the offsets used by HHS/CMS to withhold Reinsurance payments for the 2015 policy year from Consumers' Choice are now voidable under S.C. Code Ann. § 38-27-470.  Id.

      10.    Count X

For Count X, the last count of the complaint, the legal basis is the Takings Clause of the Fifth Amendment to the United States Constitution.  ECF No. 1 at 38.  According to plaintiffs, "[t]he Government expressly and deliberately interfered with and has deprived Consumers' Choice of [its] property interests and its reasonable investment-

backed expectations to receive full and timely Reinsurance payments for the 2015 policy year." Id. Thus, in plaintiffs' view, the offsets used by HHS/CMS to withhold Reinsurance payments for the 2015 policy year from Consumers' Choice constitute a taking of plaintiffs' property by the federal government. Id. at 39.

II.     Legal Standards

    A.     Dismissal under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted). Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Reynolds, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2012). That statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (citations omitted). These include money damages claims against the federal government founded upon the Constitution, an act of Congress, a regulation promulgated by an executive department, any express or implied contract with the United States, or any claim for liquidated or unliquidated damages in cases not sounding in tort. Id. (citing 28 U.S.C. § 1491(a)(1)).

    B.     Stay of Proceedings

The court's discretion to stay its proceedings is broad and well-established. See Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("The power of a federal trial court to stay its proceedings, even for an indefinite period of time, is beyond question.") (citing Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936))). This discretion is not without bounds, however. See id. (citing Hendler v. United States, 952 F.2d 1364, 1380 (Fed. Cir. 1991)). A "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." Landis, 299 U.S. at 257. A court may only properly exercise its discretion to grant an indefinite stay if there is a pressing need for such action. Id. at 255.

III.    Analysis

Defendant's only jurisdictional challenge to the complaint is to Counts VII, VIII, and IX, the state law claims. ECF No. 11 at 38-39. Jurisdiction is a threshold issue that

7

this court addresses before any challenge to the merits of the claims in the complaint. E.g., Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 991 n.8 (Fed. Cir. 2018) (citation omitted); Doe v. United States, 95 Fed. Cl. 546, 553 (2010) (citation omitted). The court's analysis turns first, therefore, to Counts VII, VIII, and IX of the complaint, before considering defendant's challenge to plaintiffs' remaining claims.

    A.    Plaintiffs' State Law Claims – Counts VII, VIII, and IX

It is beyond cavil that claims founded on state law are not within the ambit of this court's jurisdiction under the Tucker Act. See, e.g., Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 (Fed. Cir. 2007) ("Claims founded on state law are . . . outside the scope of the limited jurisdiction of the Court of Federal Claims.") (citations omitted). Further, the statute that permits federal district courts to decide state law claims, 28 U.S.C. § 1367 (2012), does not apply to this court. E.g., Hall v. United States, 69 Fed. Cl. 51, 57 (2005) (citing Trek Leasing, Inc. v. United States, 62 Fed. Cl. 673, 678 (2004)). The only question here, then, is whether the court may, through the assertion of pendent jurisdiction, entertain plaintiffs' state law claims to serve the interests of "judicial economy, convenience and fairness." Kennedy v. United States, 19 Cl. Ct. 69, 76 (1989) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966)).

The judges of this court rarely assert pendent jurisdiction over claims primarily involving state law; indeed, the authority for doing so is the subject of some dispute. Compare ATL, Inc. v. United States, 4 Cl. Ct. 672, 676 (stating that "it is fair to infer that Congress did not intend for us to have" pendent jurisdiction) (citations omitted), aff'd, 735 F.2d 1343 (Fed. Cir. 1984), with Trek Leasing, 62 Fed. Cl. at 677-83 (using pendent jurisdiction to resolve a threshold issue of copyright ownership, under state law, to resolve a challenge to the plaintiff's standing to bring suit in this court), with Liberty Ammunition, Inc. v. United States, 101 Fed. Cl. 581, 589-92 (2011) (noting the limits of the doctrine of pendent jurisdiction, and declining to assert pendent jurisdiction over a state law claim in that case). Plaintiffs urge the court to exercise pendent jurisdiction over Counts VII-IX here. ECF No. 12 at 44-45. The court declines to do so, for the following reasons.

As the Claims Court noted thirty-five years ago, this court has no statutory grant of pendent jurisdiction. ATL, 4 Cl. Ct. at 676. Thirty years ago, the Claims Court observed that no case had been found where our predecessor courts exercised pendent jurisdiction. Kennedy, 19 Cl. Ct. at 76. Today, according to the court's research, there is still no statutory grant of jurisdiction, or binding precedent, that permits this court to assert pendent jurisdiction over claims chiefly involving state law.

The Court of Claims, the predecessor court whose decisions are binding here, described the role of pendent jurisdiction in this forum as "uncertain." Lockridge v. United States, 218 Ct. Cl. 687, 689 (1978) (citation omitted). Plaintiff bears the burden

of establishing jurisdiction over its state law claims.  Reynolds, 846 F.2d at 748 (citations omitted).  Because the validity of the exercise of pendent jurisdiction by this court has not been established, plaintiff has not satisfied the court that it may exercise subject matter jurisdiction over the state law claims in Counts VII-IX of the complaint.[3]

Even if the court were convinced that it could assert pendent jurisdiction over some state law claims, this case does not provide an appropriate opportunity for such an undertaking.  First, this case is distinguishable from Trek Leasing, where an ownership issue needed to be resolved before a copyright claim, within this court's jurisdiction, could be decided.  62 Fed. Cl. at 677-83.  Second, the Trek Leasing court did not address, as would be relevant to the instant case, claims that the United States itself had violated the laws of a state, or that the federal government's use of offsets could be voided under state law.  Rather, in Trek Leasing, an ownership dispute between private parties, which involved state law, was the subject of the court's inquiry.  Id.; see also Vermont Yankee Nuclear Power Corp. v. United States, 84 Fed. Cl. 339, 342 (2008) (asserting pendent jurisdiction to decide which of two entities owned certain claims against the United States).  Thus, the differences between this case and Trek Leasing counsel against the exercise of pendent jurisdiction here.  See Liberty Ammunition, 101 Fed. Cl. at 592 (distinguishing the state law claim in that case from the state law issue in Trek Leasing, and declining to exercise pendent jurisdiction over the plaintiff's state law claim).

Further, the court is mindful of the concerns about pendent jurisdiction expressed in the Kennedy opinion.  19 Cl. Ct. at 76.  In that case, the court was reluctant to opine on matters of state law, which were beyond its expertise, because this court might misinterpret state law and prevent the fair and consistent application of such law.  Id.  Here, similarly, the court has little familiarity with the litigation and adjudication of claims founded on South Carolina's Liquidation Act.  Informed by Kennedy, the court declines to rule on the state law claims that are identified in Counts VII-IX of the complaint.

---

[3]   Defendant has argued that the United States has not waived its sovereign immunity so as to permit a South Carolina state court to compel HHS/CMS to comply with South Carolina laws.  ECF No. 11 at 29 & n.30.  Sovereign immunity may also serve as a bar to the exercise of pendent jurisdiction.  See Ware v. United States, 626 F.2d 1278, 1287 (5th Cir. 1980) (stating that "'(t)his court cannot, by using the judge-made doctrine of pendent jurisdiction waive the immunity of the United States where Congress, [the] constitutional guardian of this immunity, has declined to do so'" (quoting Sanborn v. United States, 453 F. Supp. 651, 655 (E.D. Cal. 1977)).  Because plaintiffs have not alleged that the United States has waived its sovereign immunity with respect to the state law claims in Counts VII-IX of the complaint, the rule stated in Ware would also counsel against the exercise of pendent jurisdiction here.

9

Finally, and perhaps most importantly, the factual and legal bases of the state law claims presented in Counts VII-IX of the complaint are also included in the remaining counts of plaintiffs' complaint. If plaintiffs' arguments regarding the relationship between the ACA, contract provisions, property interests, and state insolvency law eventually prevail in this suit, any violations of the state law code sections cited in Counts VII-IX of the complaint may inform plaintiffs' monetary recovery. Because the remaining counts in the complaint also rely on and reference the code sections and analysis provided in Counts VII-IX,[4] there will be no injury to "judicial economy, convenience and fairness," Kennedy, 19 Cl. Ct. at 76, in the dismissal now, under RCFC 12(b)(1), of the claims chiefly involving state law that are set forth in Counts VII-IX of the complaint.

For these reasons, defendant's motion to dismiss is **GRANTED in part** as to Counts VII, VIII, and IX of plaintiffs' complaint.

      B.     Whether the Remaining Counts of the Complaint, Counts I-VI, and Count X, Should Be Stayed

In the briefing currently before the court, the parties rely extensively on two companion opinions issued on the same day by the United States Court of Appeals for the Federal Circuit: Land of Lincoln Mutual Health Insurance Co. v. United States, 892 F.3d 1184 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2744 (U.S. June 24, 2019) (No. 18-1038), and Moda Health Plan, Inc. v. United States, 892 F.3d 1311 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2743 (U.S. June 24, 2019) (No. 18-1028). When the parties reference the holdings of Land of Lincoln and Moda, they do so, most specifically, in reference to plaintiffs' claims in Count III, Count V, and Count X of the complaint. See ECF No. 11 at 31-32, 34, 43-44; ECF No. 12 at 35-36, 38 n.14, 48 & n.16; ECF No. 13 at 11, 15 n.10. However, because the decisions in Land of Lincoln and Moda are binding precedent discussing contract and takings claims brought by health insurers asserting claims founded on the ACA, these two decisions are, in the court's view, relevant to all of the claims in this suit that are within this court's jurisdiction.

There is substantial factual overlap in the operative facts for each of the ten counts asserted in the complaint, and the amount of the monetary relief requested for each of the ten counts is identical. The parties' briefing repeatedly acknowledges the commonalities

---

[4] For example, Count II of the complaint references the South Carolina code sections that are alleged to have been violated in the claims presented in Counts VII and VIII. Compare ECF No. 1 at 25, with id. at 35-37. Similarly, the references in Count II of the complaint to HHS/CMS "acting as an insider" and acting "contrary to South Carolina insolvency law" are clearly meant to evoke the right to undo "insider preferences made voidable by the Liquidation Act," as presented in the claim found in Count IX of the complaint. Compare id. at 25, with id. at 37.

that link the various counts in the complaint.  Plaintiffs, for example, clearly label Counts III-VI as their "contract claims."  ECF No. 12 at 34.  Defendant notes that these four contract claims, the takings claim (Count X), and the statutory/regulatory claims (Counts I-II) are all challenges to the offsets exercised by HHS/CMS.  ECF No. 13 at 6.  The holdings in Land of Lincoln and Moda are relevant to each of these counts in the complaint because plaintiffs' legal theories founded on statute, regulation, contract, and the Fifth Amendment are intertwined and largely inseparable.

The Supreme Court will consider whether the holdings in Land of Lincoln and Moda are correct; the Court granted certiorari on June 24, 2019.  This development occurred after the parties had completed their briefing of defendant's motion to dismiss.  Numerous cases before this court are now stayed pending the Supreme Court's review of Land of Lincoln and Moda.[5]

Defendant's assertion that the Land of Lincoln and Moda decisions bind this court was made before the Supreme Court granted certiorari.  ECF No. 13 at 15 n.10.  The government is correct, of course, that these Federal Circuit decisions constitute binding precedent.  E.g., Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005).  To conserve the parties' resources, however, this court may stay proceedings to avoid trying the same case twice.  See, e.g., Sam v. United States, 682 F.2d 925, 929 (Ct. Cl. 1982) (staying that case once the Supreme Court granted certiorari to review pay claims of similarly-situated individuals); Lower Brule Sioux Tribe v. United States, 102 Fed. Cl. 421, 423 (2011) (continuing the stay in that case after the Supreme Court granted certiorari to review a question of law that would be dispositive in the matter); Coast Fed. Bank, FSB v. United States, 49 Fed. Cl. 11, 15 (2001) (granting a stay pending an interlocutory appeal because "[t]rying the case under one set of assumptions, then retrying it under a different set of assumptions due to a reversal on appeal, would be inconsistent with judicial economy").

Guidance from the Supreme Court, once Land of Lincoln and Moda have been decided, will aid in the resolution of defendant's challenge to Counts I-VI and Count X of the complaint.  Further, given the parties' reliance on the Federal Circuit's decisions in Land of Lincoln and Moda in their briefing, moving forward with this litigation before such guidance has been received is not a judicious use of either the parties' or the court's resources.  The court concludes, therefore, that it is appropriate to stay this litigation for the delimited period necessary to allow the Supreme Court to speak to the law relevant to plaintiffs' claims.

---

[5]     These cases are member cases consolidated for the purposes of briefing and oral argument under the lead case Maine Community Health Options v. United States, 729 F. App'x 939 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2743 (U.S. June 24, 2019) (No. 18-1023).

Defendant's motion to dismiss, therefore, is **DENIED in part**, as premature, regarding the remaining counts in plaintiffs' complaint. The court **STAYS** the remaining claims in this litigation, namely, Counts I-VI and Count X of plaintiffs' complaint, pending the Supreme Court's clarification of binding precedent.

IV. Conclusion

For the reasons stated in this opinion, plaintiffs' state law claims cannot be litigated in this court. As to the remaining claims in the complaint, defendant's challenge to those claims must await the Supreme Court's decisions in Land of Lincoln and Moda. Accordingly,

(1) Defendant's motion to dismiss, ECF No. 11, is **GRANTED in part**, as to Counts VII, VIII, and IX, and **DENIED in part**, as premature, in all other aspects;

(2) As there is no just reason for delay, pursuant to RCFC 54(b), the clerk's office is directed to **ENTER** judgment **DISMISSING** Counts VII, VIII, and IX of plaintiffs' complaint for lack of subject matter jurisdiction, without prejudice;

(3) The clerk's office is directed to **STAY** this matter until further order of the court; and

(4) Within **forty-five days** of the issuance of a decision by the Supreme Court of the United States in the matters of Land of Lincoln Mutual Health Insurance Co. v. United States, 892 F.3d 1184 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2744 (U.S. June 24, 2019) (No. 18-1038), and Moda Health Plan, Inc. v. United States, 892 F.3d 1311 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2743 (U.S. June 24, 2019) (No. 18-1028), consolidated under Maine Community Health Options v. United States, 729 F. App'x 939 (Fed. Cir. 2018), cert. granted, 139 S. Ct. 2743 (U.S. June 24, 2019) (No. 18-1023), the parties are directed to **FILE** a **joint status report** recommending a schedule for further proceedings in this case.

IT IS SO ORDERED.

        s/Patricia E. Campbell-Smith
        PATRICIA E. CAMPBELL-SMITH
        Judge